# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA
### (333 Constitution Avenue N.W. Washington D.C. 20001, Room 1225)

**Ronald Satish Emrit,**
    Plaintiff (Pro Se)

      v.

**Ajit Pai**
    % Federal Communications
    Commission
    445 12th Street SW,
    Washington, DC 20554
    1-888-225-5322

**Mignon Clyburn**
    Federal Communications
    Commission
    445 12th Street SW,
    Washington, DC 20554
    1-888-225-5322

**Michael O'Rielly**
    Federal Communications
    Commission
    445 12th Street SW,
    Washington, DC 20554
    1-888-225-5322

**Brendan Carr,**
    Federal Communications
    Commission

Case: 1:17-cv-02849    Jury Demand
Assigned To : Unassigned
Assign. Date : 12/15/2017
Description: Pro Se Gen. Civil    F Deck

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

RECEIVED
Mail Room

DEC 1 5 2017

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

445 12th Street SW,        )
Washington, DC 20554     )
1-888-225-5322        )
                            )

**Jessica Rosenworcel,**     )
    Federal Communications    )
    Commission           )
    445 12th Street SW,    )
    Washington, DC 20554  )
    1-888-225-5322      )
                         )

**President Donald Trump**  )
    ℅ The White House    )
    1600 Pennsylvania Ave NW, )
    Washington, DC 20500  )
    202-456-1111        )
                       )

**Attorney General Jeff Sessions,** )
    U.S. Department of Justice )
    950 Pennsylvania Avenue, NW )
    Washington, DC 20530-0001 )
    202-353-1555        )
                      )

**Chairman of Federal Trade**  **)**
**Commission (FTC)**       )
    1999 Bryan St # 2150,   )
    Dallas, TX 75201     )
    <u>(214) 979-9350</u>      )
                       )

**Secretary Wilbur Ross,**   )
    ℅ U.S. Department of Commerce )
    1401 Constitution Ave NW )
    Washington, DC 20230  )

```
        (202) 482-2000                                    )
                                                          )
Linda McMahon,                                            )
        % U.S. Small Business Administration (SBA)  )
        US Small Business Administration                 )
        409 3rd St, SW                                   )
        Washington DC 20416                              )
        800-827-5722                                     )
        hubzone@sba.gov                                  )
                                                          )
Irving Williamson                                        )
        % United States International                    )
        Trade Commission (ITC)                           )
        500 E Street,SW                                  )
        Washington, DC 20436                             )
        202.205.2000                                     )
                                                          )
                                                          )
        Defendants                                       )
                                                          )
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing forth this
complaint against all eleven of the defendants which have violated (and will
presumably continue to violate) the plaintiff's constitutional rights by trying to repeal
"net neutrality," i.e. a doctrine in place which preserves the internet as an "even
playing field" in which small companies and individuals have the same amount of
power as the larger internet service providers (ISP's) which are probably violating the
Sherman Anti-Trust Act and Clayton Anti-Trust Act by engaging in "price-fixing" and
trying to form an oligopoly or even a monopoly (through acquisitions and mergers

arranged by investment banks on Wall Street) in the arena of telecommunications. The issue is still ripe for adjudication and not moot given that the plaintiff is an entrepreneur who uses the internet to upload and sell his music and music videos (uploaded as .wav files and sold as mp3 files and mp4 files). In bringing forth this complaint, the plaintiff states, avers, and alleges the following:

## I.) NATURE OF THE CASE

1.) The internet was created by the Pentagon and Defense Advanced Research Projects Agency (DARPA). To invoke the Socratic Method, "why is a novelty created by DARPA/Pentagon and given to the people of the world as a "gift" being regulated by an out-of-control chairman or director at the Federal Communications Commission (FCC).

2.) The plaintiff would like to point out the corruption of the FCC as for years this agency has allowed major record labels to "get away with" "payola" which is expressly forbidden by 47 U.S.C. Section 317. Needless to say, the FCC should not be in control of the internet whereas it is more than welcome to be in control of the corrupt industries of TV and radio as AT&T attempts acquire Time Warner even after Time warner "got rid" of its subsidiary Time Magazine. To invoke the Socratic Method again, why don't the FCC and FTC block the attempted acquisition of Time Warner by AT&T (Answer: the FCC is corrupt)

1.) In the early part of the year 2006, the plaintiff had the honor in meeting the former CEO of Verizon, i.e. Ivan Seidenberg. The plaintiff attended a Verizon conference off of Connecticut Avenue at what the plaintiff believes to be a Sheraton Hotel.

2.) The plaintiff was able to attend this Verizon Conference at the D.C. Sheraton because he was helping his former promoters (Thomas Hart, Esquire and Stanley "Skip" Kelly) sell videotapes and/or DVD's about the Million Man

4

March orchestrated by Minister Lewis Farrakhan (the documentary was narrated by actress Marla Gibbs known for her role as "Florence" in the Jeffersons starring the late Sherman Hemsley).

3.) Like FCC Chairman Ajit Pai, the plaintiff (Ronald Emrit) at one time had access to the lavish conferences orchestrated by Verizon, undoubtedly an extravagant retreat to pamper the bosses at Verizon and particularly Ivan Seidenberg who probably had a "golden parachute" before he stepped down at Verizon.

4.) When it comes to a massive copyright infringement case, look no further than the landmark case of ***Viacom v. YouTube, No. 07 Civ. 2103, 2010 WL 2532404 (S.D.N.Y 2010)***, i.e. a case filed by Viacom in the Southern District of New York which was essentially a battle to obtain the licensing of music videos from the major record labels, i.e. Universal Music Group (UMG), Sony BMG, and Warner Music Group. Supposedly, EMI merged with Universal and the Federal Trade Commission (FTC) allowed the formation of an oligopoly (against this concept of perfect competition) when it approved of the merger between Sony and BMG. The Warner Music Group (WMG) is the parent corporation to Warner Brothers, Atlantic Records, and Elektra Records.

https://en.wikipedia.org/wiki/Viacom_International_Inc._v._YouTube,_Inc.

5.) The case of ***Viacom v. YouTube, supra***, involved the invocation of OCILLA, i.e. Title II of the Digital Millennium Copyright Act (DMCA) which imposes the applicable provisions of the World Intellectual Property Organization (WIPO) upon businesses in the United States.

6.) In the present case at bar, the court should also pay close attention to the stare decisis/persuasive precedent of Diamond v. Chakrabarty, ***Diamond v.***

***Chakrabarty, 447 U.S. 303 (1980)****, i.e. a case in which a Hindu/East Indian inventor (Hindu like FCC Chairman Ajit Pai) was able to patent a microorganism.

https://en.wikipedia.org/wiki/Diamond_v._Chakrabarty

7.) The plaintiff (Ronald Satish Emrit) used to be the paralegal/law clerk for Atchuthan Sris, i.e. a Hindu defense attorney practicing in Fairfax, VA who was the prosecutor for Haymarket, VA and who also practiced law in a firm with family attorney Pamela Cave, i.e. an attorney who was featured in Lifetime Magazine in the same edition of the magazine that featured the marriage of the plaintiff's cousin Katharine Bransford to Jeff Zukerman.

8.) Katharine Bransford and Jeff Zukerman were married on August 31st, 2002, i.e. the same date that the plaintiff married Sabine Aisha Jules in Las Vegas, NV.

9.) Like CNN's Erin Burnett, Katharine Bransford worked as a vice president at Goldman Sachs on Wall Street; the plaintiff was interviewed for an analyst position on Wall Street at Goldman Sachs but the plaintiff was told by Goldman Sachs employee Doug McNelly that the plaintiff (Ronald Emrit) "talked too black." Doug McNeely was an alumnus of Duke University, while the plaintiff turned down Duke University and went to Brown University.

10.) What does the holding of ***Viacom v. YouTube, supra***, and the holding of ***Diamond v. Chakrabarty***, supra in addition to the plaintiff's job interview with Goldman Sachs have anything to do with the FCC Chairman Ajit Pai, "net neutrality," and the present case at bar? The answer has to do with intellectual property, barriers to entry (such as copyrights and patents), and racial

discrimination (Doug McNeely, Ajit Pai, and Ronald Emrit are all "brown minorities" even if they are not all "Brown alumni").

11.)    First of all, the plaintiff Ronald Satish Emrit would like to state for the record that he loves Donald Trump and believes in his campaign promise of "Make America Great Again!" If the plaintiff had not been at Montevista Hospital (in Las vegas, NV) at the time, the plaintiff almost certainly would have voted for Donald Trump. There is just one mistake that President Trump has made, and that is appointing Ajit Pai to be chairman of the Federal Communications Commission (FCC).

12.)    Pursuant to Rule 201 of the Federal Rules of Evidence (FRE), the court should take judicial notice that the plaintiff in the present case at bar is mixed and is half-Indian (i.e. Hindu and not American Indian) and half-black. Therefore, the plaintiff knows what it is like for other races (mainly white/Caucasian people) to be racist against him simply because of the fact that he is mixed with Irish, African-American, East Indian, and American Indian.

13.)    Similarly, the plaintiff understands that FCC Chairman Ajit Pai probably has faced a lot of racism in his days simply because of the fact that he is East Indian/Hindu and the American culture has stereotyped Hindu/East Indian people as being "7-11 workers" or "cab drivers" with the last name "Patel" who carry an offensive odor. Needless to say, these stereotypes are wrong and should not be said about members of the Australasian/Australian Aborigine/East Indian group of people (who were related and perhaps part of the same continent until plate tectonics and Pangaea separated Indian and Australia from each other and Africa and before plate tectonics "slammed" India into Asia forming the Himalayan Mountain Range and Mt. Everest).

14.)    Because Ajit Pai and the plaintiff have undoubtedly both experienced racism and prejudice in the United States of America (although people from the Indus

Valley Civilization have always been characterized as being Caucasian even though the Aryans instituted a Caste system in India), the plaintiff finds it hard to believe that FCC Chairman Ajit Pai is trying to institute a Caste System within the United States of America.

15.) More specifically, the FCC Chairman is trying to form a Caste System by indicating that only companies like Verizon Communications and Comcast should be the "primetime players" as Internet Service Providers (ISP's) and that these large conglomerates can "throw their weight around" by discriminating against smaller internet-based companies like Vimeo, Daily Motion, VHX, etc..

16.) By trying to repeal "net neutrality," FCC Chairman Ajit Pai is trying to impose a Caste System in which companies like Vimeo, YouTube, VHX, Metacafe, and Daily Motion are at the bottom of the Caste System while Verizon and Comcast are at the top of the Caste System (i.e. a classic pyramid scheme or ponzi scheme like Bernie Madoff tried to create with "other people's money" (OPM)).

17.) Given that Ajit Pai allegedly used to work for Verizon Communications, President Donald Trump has engaged in what could be characterized as "negligent entrustment" by "passing the keys" to a drunk driver who is sure to create a catastrophic collision by repealing "net neutrality" and changing the face of "Search Engine Optimization" (SEO) and Social Media Optimization forever (or at least until the next FCC Chairman comes along and brings back the much-needed net neutrality).

18.) Ajit Pai must think that he is like Jack Abramoff in that his job is to continue to lobby on behalf of Verizon Communications even as FCC Chairman (no different from the Koch Brothers). This is corruption and probably price-fixing in violation of the Robinson-Patman Act.

8

19.) Nevertheless, the plaintiff alleges that all of the defendants have violated and will continue to violate his equal protection rights inherent from the Fifth and Fourteenth Amendments to the U.S. Constitution.

20.) Nevertheless, the plaintiff alleges that all of the defendants have violated and will continue to violate his substantive and procedural due process inherent from the Fifth and Fourteenth Amendments to the U.S. Constitution.

21.) Furthermore, the plaintiff alleges that all of the defendants (by engaging in a corrupt conspiracy to repeal "net neutrality") have violated and will continue to violate the Privileges and Immunities Clause inherent from Article IV, Section 2, Clause 1 of the U.S. Constitution (i.e. the Comity Clause).

22.) Moreover, the plaintiff alleges that none of the defendants should be protected by the Eleventh Amendment doctrine of sovereign immunity and that it is unconstitutional to require that any of the defendants waive their sovereign immunity as it is reasonable to assert that no governmental defendant would ever waive its right to sovereign immunity because no governmental agency (on the federal, state, or local level) would ever agree to be sued in its own jurisdiction.

23.) Accordingly, any agents acting on behalf of the defendants as a principal also have the apparent, actual, express, and implied authority to bind any of the defendants to contract with regards to any subsequent matters that may be found relevant to a material breach of contract analysis using the parol evidence rule, Statute of Frauds, promissory estoppel (for a substitute for consideration), and/or the doctrine of anticipatory repudiation.

## II.) PARTIES TO THIS LITIGATION

24.) The plaintiff is an indigent, disabled, and unemployed resident of the state of Nevada. His current mailing address is 6655 38th Lane East, Sarasota, FL 34243. His

cell phone number is currently (301)537-8471 and his primary email address is einsteinrockstar2@outlook.com. The plaintiff is filing this cause of action in the U.S. District Court for the Southern District of Iowa because he anticipates that he will be moving to Iowa after having been homeless in Maryland, Florida, and Nevada.

25.) The first defendant is Ajit Pai. His mailing address is: Ajit Pai % Federal Communications Commission (FCC), 445 12th Street SW, Washington, DC 20554. The phone number to reach him is 1-888-225-5322

26.) The second defendant is Mignon Clyburn whose address is at the Federal Communications Commission (FCC), 445 12th Street SW, Washington, DC 20554. He can also be reached at 1-888-225-5322.

27.) The third defendant is Michael O'Rielly whose address is also at the Federal Communications Commission (FCC), 445 12th Street SW, Washington, DC 20554. He can also be reached at 1-888-225-5322

28.) The fourth defendant is Brendan Carr, whose address is also at the Federal Communications Commission, 445 12th Street SW, Washington, DC 20554. He can also be reached at 1-888-225-5322.

29.) The fifth defendant is Jessica Rosenworcel, whose address is also at Federal Communications Commission (FCC), 445 12th Street SW, Washington, DC 20554. She can also be reached at 1-888-225-5322.

30.) The sixth defendant is President Donald Trump whose address is % The White House, 1600 Pennsylvania Ave NW, Washington, DC 20500. He can be reached at 202-456-1111.

31.) The seventh defendant is Attorney General Jeff Sessions whose address is % U.S. Department of Justice, 950 Pennsylvania Avenue, NW Washington, DC 20530-0001. He can be reached at 202-353-1555

32.) The eighth defendant is the Chairman of Federal Trade Commission (FTC) whose address is 1999 Bryan St # 2150, Dallas, TX 75201 who can be reached at (214) 979-9350.

33.) The ninth defendant is Secretary Wilbur Ross, whose address is % U.S. Department of Commerce, 1401 Constitution Ave NW, Washington, DC 20230. He can be reached at (202) 482-2000.

34.) The tenth defendant is Linda McMahon, whose address is % U.S. Small Business Administration (SBA), US Small Business Administration, 409 3rd St, SW Washington DC 20416. She can be reached at 800-827-5722 and she can be emailed at hubzone@sba.gov.

35.) The eleventh defendant is Irving Williamson whose address is % United States International Trade Commission (ITC), 500 E Street, SW Washington, DC 20436 who can be reached at 202.205.2000.

## III.) JURISDICTION AND VENUE

36.) According to Federal Rules of Civil Procedure 8(a)(1), Plaintiff is required to provide "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;"

37.) Because the court does not already have personal or subject matter jurisdiction over this issue, it is necessary to engage in a brief discussion of the court's jurisdiction so that the defendants can not move to dismiss this case based on procedural grounds involving a lack of proper jurisdiction.

38.) Pursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the District of Columbia (as an Article III court) has jurisdiction over this matter because there is complete diversity of jurisdiction between the Plaintiff and the sole defendant.

39.) As an Article III court, the U.S. District Court for the District of Columbia also has subject matter jurisdiction over the present case at bar because this proceeding

involves a discussion of the Robinson-Patman Act (precluding price-fixing and price discrimination), Sherman Anti-trust Act, Claayton Anti-Trust Act, and perhaps to a lesser extent the Magnuson-Moss Act (dealing with implied and express warranties).

40.) In other words, a federal question is presented by the implication of the Robinson-Patman Act, Magnuson-Moss Act, Clayton Anti-Trust Act, and Sherman Anti-Trust Act.

41.) Venue in this jurisdiction is also proper pursuant to 28 U.S.C.A. Sections 1391 and 1400.

42.) Because the amount in controversy exceeds $75,000 (i.e. $45,000,000 is greater than $75.000), this court also has jurisdiction with regards to that particular issue.

## IV.) STATEMENT OF FACTS

43.) Because of the fact that Ajit Pai and the FCC are trying to "do away" with "net neutrality," the plaintiff has been feeling an unnecessary pressure to get his music videos distributed by a company called Vydia (to get the music videos on MTV, BET, VH1 and other Viacom-owned stations), Symphonic Distribution, and/or JTV Digital (in Great Britain). This is the music video for **"Soul Mate"** (directed and edited by Kevin Frederick of Bronx, NY and the song was produced by Bryan Cantu aka DJ Anthor of San Leandro, CA):

https://www.youtube.com/watch?v=prgqb72wHLk

https://vimeo.com/211439570

44.) This is the music video for **"Motivated by Money)"** (directed and edited by Kevin Frederick of Bronx, NY and the song was produced by Bryan Cantu aka DJ Anthor of San Leandro, CA):

https://www.youtube.com/watch?v=M3SGKdYIeRw

https://vimeo.com/207951971

45.) This is the music video for **"All The Fine Ladies"** (directed and edited by Kevin Frederick of Bronx, NY and the song was produced by Stanley Frank of TKG Productions, Inc. of Owings Mills, MD):

https://www.youtube.com/watch?v=cJXzHNSJDdE

https://vimeo.com/211438133

46.) This is the music video for **"Dilemma"** (directed and edited by Kevin Frederick of Bronx, NY and the song was produced by D-Rail and Garrett Music Academy in Owings, MD (Calvert County)):

https://www.youtube.com/watch?v=r2UdXll8CDQ&t=70s

https://vimeo.com/211338905

47.) This is the music video for **"There She Goes Again"** (directed and edited by Indy Shome of Providence, RI and the song was produced by Vince Coates of Pulse Music Productions, Inc. based in San Diego, CA):

https://www.youtube.com/watch?v=1Wfh65eS2Oc

https://vimeo.com/100552809

https://itunes.apple.com/us/music-video/there-she-goes-again/895430735
48.) This is the music video for **"Three-Car Garage"** (directed and edited by Indy Shome of Providence, RI and the song was produced by D-Rail and Garrett Music Academy in Owings, MD (Calvert County)):

https://www.youtube.com/watch?v=OHJBNDyjL30&t=14s
https://vimeo.com/76791043

https://itunes.apple.com/us/music-video/three-car-garage/775047944

49.) This is the music video for **"Lady Brazil"** (directed and edited by Santiago Semino of Quincy, MA and the song was produced by D-Rail and Garrett Music Academy in Owings, MD (Calvert County)):

https://www.youtube.com/watch?v=S3VYGxgawnA

https://vimeo.com/76932866

https://itunes.apple.com/us/music-video/lady-brazil/771084723

50.) This is the music video for **"La Reina Cubana"** (directed and edited Paul Gillingwater and Luis Ruiz of New York, NY and the song was produced by Patrick Hightower of Street Star Studios in Haymarket, VA where Atchuthan Sris used to be the prosecutor and Thomas Hart, Esquire and Stanley "Skip" Kelly of Washington, DC orchestrated this connection between Patrick Hightower and the plaintiff):

https://www.youtube.com/watch?v=GAeO_do14Y8

https://vimeo.com/62014290

https://itunes.apple.com/us/music-video/la-reina-cubana/794968378

51.) This is the music video for **"Brenda (Having My Baby)"** (directed and edited by Tee Platinum of Platinum Plus Productions, Inc. based in Atlanta, GA and the song was produced by Vince Coates of Pulse Music Productions, Inc. based in San Diego, CA):

https://www.youtube.com/watch?v=3H74zIs6hJI

https://vimeo.com/55769612

https://itunes.apple.com/us/music-video/brenda-having-my-baby/685437823

52.) This is the music video for **"Lookin' for My Dimepiece"** (directed and edited by Tee Platinum of Platinum Plus Productions, Inc. based in Atlanta, GA and the

song was produced by Stanley Frank of TKG Productions, Inc. in Owings Mills, MD):

https://www.youtube.com/watch?v=kMio2Q49VIU

https://vimeo.com/49298529

https://itunes.apple.com/us/music-video/lookin-for-my-dimepiece/794968268

53.) This is the music video for **"I Need You Baby"** (directed and edited by the plaintiff's nephew Matthew Brooks and his niece Michelle Brooks and the song was produced by Stanley Frank of TKG Productions, Inc. in Owings Mills, MD):

https://www.youtube.com/watch?v=k9LWLVQemvw

https://vimeo.com/229415759

54.) This is the music video for **"La Reina Cubana (Live Performance at Sony Building in South Beach of Miami, FL"** (directed and edited by Abdul of Tha Lot and orchestrated by Sherry Carey, DJ Classic, Golden Child, and Matari of Pure Gold Entertainment in Miami, FL and Bahamas and the performance was on Krib.tv in association with Miami Vibez; the song was produced by Patrick Hightower of Street Star Studios in Haymarket, VA):

https://www.youtube.com/watch?v=ga-lJXUu0Dw&t=19s

https://vimeo.com/49791889

55.) This is the music video for **"All the Fine Ladies (Live Performance at Sony Building in South Beach of Miami, FL)"** (directed and edited by Abdul of Tha Lot and orchestrated by Sherry Carey, DJ Classic, Golden Child, and Matari of Pure Gold Entertainment in Miami, FL and Bahamas and the performance was on Krib.tv in association with Miami Vibez; the song was produced by Stanley Frank of TKG Productions, Inc. in Owings Mills, MD)

https://www.youtube.com/watch?v=34oCtqvFN9M

https://vimeo.com/49793252

56.) This is the promo for the music video for **"Brenda (Having My baby)"** (promo created by Tee Platinum of Platinum Plus Productions, Inc.):

https://www.youtube.com/watch?v=5-B6NytyW9U

https://vimeo.com/51110990

57.) This is the promo for the music video for **Lookin' for My Dimepiece** (promo created by Tee Platinum):

https://www.youtube.com/watch?v=dAW47qpSCrw

https://vimeo.com/49794793

58.) These are **"Behind The Scenes"** interviews for **Lookin' for My Dimepiece** music video (BTS Interviews created by Tee Platinum):

https://www.youtube.com/watch?v=yHZ1uHc4Drc

59.) This is the music video for E Grizzly (i.e. Erik Grizzly) and Satish Dat Beast on Miami Vibez:

https://www.youtube.com/watch?v=5PZ1Cu2egAc

60.) This is **"Talk About a Starving Artist"** by my friend Brandon Webb:

https://www.youtube.com/watch?v=3QAMOweysos

This is my nephew **Crooks** with **"I'm Going Crazy:"**

https://www.youtube.com/watch?v=Xd5WjXcZVyc

61.) This is Al B. Sure and Puff Daddy's and Kim Porter's son **Quincy** with **"I Can tell You:"**

https://www.youtube.com/watch?v=WIuR252ORZs

62.) This is a tribute to **Paul Taylor** with **"Exotica:"**

https://www.youtube.com/watch?v=AAlzGhtAauw

63.) Most of these music videos would be less accessible to the plaintiff's potential fan base if Ajit Pai and the FCC are successful in getting rid of the doctrine of "net neutrality" which enjoins and/or precludes Internet Service Providers (ISP's) from discriminating against persons and small companies such as the plaintiff and his independent record label "doing business as" (d/b/a) Alex Garcia Enterprises, Inc. (AGE). The plaintiff relies on "key word searches" and "Search Engine Optimization" (SEO) to have equal access to a potential fan base from consumers.


**V.)COUNT ONE: VIOLATION OF THE EQUAL PROTECTION CLAUSE INHERENT FROM THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION**

64.) Because of the fact that the plaintiff is mixed with African-American and East Indian (like Ajit Pai), it can be stated with substantial certainty that he is a member of a suspect classification of discrete and insular minorities which have suffered invidious discrimination within the context of American jurisprudence.

65.) As such, any federal, state, or local laws/regulations (restricting the plaintiff from having fair access to a fan base on the internet by repealing net neutrality) must pass a strict scrutiny test as opposed to an intermediate scrutiny test or rational basis test.

66.) More specifically, the burden of proof and persuasion rests squarely with the eleven defendants to show by a preponderance of the evidence that any federal, state, or local laws (restricting the plaintiff from having access to a larger fan base on the internet by repealing "net neutrality") applying to the plaintiff must be "narrowly-tailored to a compelling government objective." (rather than the lower level of being "rationally-related to a legitimate government objective in which the burden of proof and persuasion rests squarely with the plaintiff).

67.) The plaintiff argues in "good faith" that there is no compelling government objective in repealing the doctrine of "net neutrality" other than to create an oligopoly of monopoly and to assist companies like Verizon and Comcast to gain a competitive advantage and to reduce perfect competition, which is favored in macroeconomics.

68.) As such, all of the defendants have violated the plaintiff's equal protection rights by trying to set forward a process that will repeal "net neutrality" through provisions added to the Code of Federal Regulations (CFR) and/or Federal Register. However, the Constitution has created a doctrine of "separation of powers" which indicates that Congress passes laws and not Ajit Pai or the FCC, i.e. members of the federal executive branch of government. Congress also has plenary power over interstate commerce through the Dormant Commerce Clause.

# V.) COUNT TWO: VIOLATION OF THE DUE PROCESS CLAUSE INHERENT FROM THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

69.) Because of the fact that the plaintiff is mixed with African-American and East Indian (like Ajit Pai), it can be stated with substantial certainty that he is a member of a suspect classification of discrete and insular minorities which have suffered invidious discrimination within the context of American jurisprudence.

70.) As such, any federal, state, or local laws/regulations (restricting the plaintiff from having fair access to a fan base on the internet by repealing net neutrality) must pass a strict scrutiny test as opposed to an intermediate scrutiny test or rational basis test.

71.) More specifically, the burden of proof and persuasion rests squarely with the eleven defendants to show by a preponderance of the evidence that any federal, state, or local laws (restricting the plaintiff from having access to a larger fan base on the internet by repealing "net neutrality") applying to the plaintiff must be "narrowly-tailored to a compelling government objective." (rather than the lower level of being "rationally-related to a legitimate government objective in which the burden of proof and persuasion rests squarely with the plaintiff).

72.) The plaintiff argues in "good faith" that there is no compelling government objective in repealing the doctrine of "net neutrality" other than to create an oligopoly of monopoly and to assist companies like Verizon and Comcast to gain a competitive advantage and to reduce perfect competition, which is favored in macroeconomics.

73.) As such, all of the defendants have violated the plaintiff's substantive and procedural due process rights by trying to set forward a process that will repeal "net neutrality" through provisions added to the Code of Federal Regulations (CFR) and/or Federal Register. However, the Constitution has created a doctrine of "separation of powers" which indicates that Congress passes laws and not Ajit Pai or the FCC, i.e. members of the federal executive branch of government. Congress also has plenary power over interstate commerce through the Dormant Commerce Clause.

## VI.) COUNT THREE: VIOLATION OF THE PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV, SECTION 2, CLAUSE 1 OF THE U.S. CONSTITUTION

74.) Because of the fact that the plaintiff is mixed with African-American and East Indian (like Ajit Pai), it can be stated with substantial certainty that he is a member of a suspect classification of discrete and insular minorities which have suffered invidious discrimination within the context of American jurisprudence.

75.) As such, any federal, state, or local laws/regulations (restricting the plaintiff from having fair access to a fan base on the internet by repealing net neutrality) must pass a strict scrutiny test as opposed to an intermediate scrutiny test or rational basis test.

76.) More specifically, the burden of proof and persuasion rests squarely with the eleven defendants to show by a preponderance of the evidence that any federal, state, or local laws (restricting the plaintiff from having access to a larger fan base on the

internet by repealing "net neutrality") applying to the plaintiff must be "narrowly-tailored to a compelling government objective." (rather than the lower level of being "rationally-related to a legitimate government objective in which the burden of proof and persuasion rests squarely with the plaintiff).

77.) The plaintiff argues in "good faith" that there is no compelling government objective in repealing the doctrine of "net neutrality" other than to create an oligopoly of monopoly and to assist companies like Verizon and Comcast to gain a competitive advantage and to reduce perfect competition, which is favored in macroeconomics.

78.) As such, all of the defendants have infringed upon the plaintiff's privileges and immunities by trying to set forward a process that will repeal "net neutrality" through provisions added to the Code of Federal Regulations (CFR) and/or Federal Register. However, the Constitution has created a doctrine of "separation of powers" which indicates that Congress passes laws and not Ajit Pai or the FCC, i.e. members of the federal executive branch of government. Congress also has plenary power over interstate commerce through the Dormant Commerce Clause.

## VII.) COUNT FOUR: VIOLATION OF 42 U.S.C. SECTION 1983

79.) According to Cornell Law School and The Legal Information Institute, 42 U.S.C. Section 1983 provides in pertinent part that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

80.) The plaintiff argues that all eleven of the defendants have violated and will continue to violate 42 U.S.C. Section 1983 because of the fact that repealing "net neutrality" will have the ultimate effect of negatively impacting minorities (such as the plaintiff) who have fair access to potential consumers on the internet given that the Internet Service Providers (ISP's) as an oligopoly are not allowed to interfere with reducing "Search Engine Optimization" (SEO) and the use of "key words" which allows individuals and smaller companies to get as many "views" as larger companies that are probably in "privity of contract" with conglomerates such as Verizon and Comcast (Comcast is the parent corporation to NBC Universal).

## VIII.) COUNT FIVE: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

81.) According to the website operated by the American Association of University Women (AAUW), "Title VII of the Civil Rights Act of 1964 is a federal law that prohibits employers from discriminating against employees on the basis of sex, race, color, national origin, and religion. It generally applies to employers with 15 or more

employees, including federal, state, and local governments. Title VII also applies to private and public colleges and universities, employment agencies, and labor organizations."

82.) The plaintiff argues that all eleven of the defendants have violated and will continue to violate Title VII of the Civil Rights Act of 1964 given the fact that minorities and less affluent individuals will be negatively impacted by the repeal of the doctrine of "net neutrality" given that net neutrality assures that individuals and smaller businesses will have fair access to a large consumer base on the internet due to the egalitarian nature of "Search Engine Optimization" (SEO) and the use of keywords through Google searches and other search engines.

## IX.) COUNT SIX: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (ADA)

83.) According to the website ADA.gov, "The Americans with Disabilities Act (ADA) was signed into law on July 26, 1990, by President George H.W. Bush. The ADA is one of America's most comprehensive pieces of civil rights legislation that prohibits discrimination and guarantees that people with disabilities have the same opportunities as everyone else to participate in the mainstream of American life -- to enjoy employment opportunities, to purchase goods and services, and to participate in State and local government programs and services. Modeled after the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, religion, sex, or national origin – and Section 504 of the Rehabilitation Act of 1973 -- the ADA is an

"equal opportunity" law for people with disabilities. To be protected by the ADA, one must have a disability, which is defined by the ADA as a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment. The ADA does not specifically name all of the impairments that are covered."

84.) In the present case at bar, the plaintiff argues that all of the eleven defendants are "covered entities" within the context of potential defendants that have violated the ADA of 1990 by discriminating against disabled persons.

85.) Disabled persons can use the internet and can have equal access to a consumer or fan base through the egalitarian nature of "Search Engine Optimization" (SEO) which is assured by the doctrine of "net neutrality." By repealing the doctrine of "net neutrality," the eleven defendants are tampering with the egalitarian nature of the internet which precludes and/or enjoins the formation of oligopolies and/or cartels that violate the Anti-Trust Laws and prevent the formation of an industry guaranteeing perfect competition, which is favored from a macro-economical perspective and to preserve capitalism and the flourishing of small businesses.

## XI.) COUNT SEVEN: MATERIAL BREACH OF CONTRACT

86.) A breach of contract is material if, as a result of the breach, the nonbreaching party does not receive the substantial benefit of his or her bargain. If the breach is material, the nonbreaching party (i) may treat the contract as at an end (any duty of

counter-performance is discharged), and (ii.) has an immediate right to all remedies

for breach of the entire contract, including total damages (Note that a minor breach, if

coupled with anticipatory repudiation, is treated as a material breach).

87.) In determining whether a breach is material or minor, the courts look at the

following factors:

i.) The amount of benefit received by the nonbreaching party;

ii.) The adequacy of compensation for damages to the injured party;

iii.) The extent of part performance by the breaching party;

iv.) Hardship to the breaching party;

v.) Negligent or willful behavior of the breaching party; and

vi.) The likelihood that the breaching party will perform the remainder of the contract.

88.) John Locke described government itself as being a "social contract" ensuring that

the people do not have to suffer the negative effects of an anarchistic society which

Thomas Hobbes described as being "nasty, brutish, and short." John Winthrop

described a "City Upon the Hill" when he engaged in his political dissertations. In the

present case at bar, the plaintiff (Ronald Satish Emrit) argues that all eleven of the

defendants have an obligation (though this "social contract" described by John Locke)

to protect the majority of the American people from this tyranny which Ajit Pai is

leading in an effort to help out his former bosses at Verizon. By allowing Ajit Pai to

have almost "unfettered discretion" in imposing this oligopoly over the internet, all eleven defendants are violating this "Social Contract" which John Locke spoke to prevent what Thomas Hobbes described as a life which is "nasty, brutish, and short."

## XII.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff is requesting a remedy at law in the form of a judgment in the amount of $45,000,000 (forty five million dollars). This remedy at law would be appropriate considering the fact that all eleven of the defendants have committed a material breach of contract. Moreover, all eleven of the defendants have committed a violation of the following "black-letter law" provisions of federal law: 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 (ADA), Robinson-Patman Act, Magnuson-Moss Act, Clayton Anti-Trust Act, and Sherman Anti-Trust Act. Furthermore, all eleven of the defendants (acting on behalf of the federal government) have violated the Equal Protection Clause and Due Process Clause of the Fifth and Fourteenth Amendments to the U.S Constitution in addition to having violated the Privileges and Immunities Clause of Article IV, Section 2, Clause 1 of the U.S. Constitution. In asserting this "prayer for relief," the plaintiff states, avers, and alleges the following:

A.) The remedy at law in the form of a judgment in the amount of $45,000,000 (forty-five million dollars) would be appropriately considered to be expectation, reliance, restitution, incidental, and consequential damages for the defendants' material breach of contract (i.e. the "social contract" described by John Locke).

B.) The remedy at law in the form of a judgment in the amount of $45,000,000 would also be appropriately considered to be punitive, compensatory, treble, actual, presumed, and special damages for the defendants' violation of the following "black-letter law" provisions of federal law: 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 (ADA), the Robinson-Patman Act, Clayton Anti-Trust Act, Sherman Anti-Trust Act, and Magnuson-Moss Act.

C.) The remedy at law in the form of a judgment in the amount of $45,000,000 would also be considered appropriate given that it has been proved that all eleven of the defendants have violated the plaintiff's rights with regards to the Equal Protection Clause and Due Process Clause (inherent from the Fifth and Fourteenth Amendments) and the Privileges and Immunities Clause (of Article IV, Section 2, Clause 1).

D.) The plaintiff is also requesting the equitable remedy of an injunction or specific performance precluding and/or enjoining any of the eleven defendants from being

able to repeal "net neutrality" by adding provisions to the Code o=f Federal

Regulations (CFR) and/or Federal Register. Congress must pass laws regarding

"net neutrality" through bicameralism and presentment. The FCC and Ajit Pai are

not part of the federal legislative branch of government and therefore they are not

allowed to make new laws regarding "net neutrality" as this would be considered

to be a breach of the doctrine of the separation of powers.

D.) While punitive damages are not allowed pursuant to the common law of

contracts or the Restatement (Second) of Contracts, liquidated damages may be

applicable under this theory espoused by the plaintiff that all eleven of the

defendants are bound by this "social contract" created between the government and

the American people (as described by philosopher John Locke) to prevent the

creation of a tyrannical oligopoly on the internet which Thomas Hobbes described

as "nasty, brutish, and short" and negatively affecting "The City Upon a Hill"

described by John Winthrop.


Respectfully submitted,


*Ronald Satish Emmit*

Ronald Satish Emrit

8756 Las Vegas Court,

    Apartment # 2023

Fort Worth, TX 76116

(301)537-8471

einsteinrockstar@hotmail.com

einsteinrockstar2@outlook.com